# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

_____
)
In re:                                           )
                                                 )   Chapter 13
AMILCAR F. LOPEZ,                                 )   Case No. 09-45463-HJB
LUISA E. LOPEZ,                                   )
                                                 )
                Debtors                          )
                                                 )
_____)
                                                 )
                                                 )
AMILCAR F. LOPEZ,                                )
LUISA E. LOPEZ,                                  )
                                                 )
                                                 )   Adversary Proceeding
                Plaintiffs                       )   No. 10-04057
                                                 )
     v.                                          )
                                                 )
MORTGAGE ELECTRONIC                              )
REGISTRATION SYSTEMS, INC.,                      )
CONSUMER SOLUTIONS, LLC, and                     )
DECISION ONE MORTGAGE CO., LLC,                  )
                                                 )
                Defendants                       )
_____)

### MEMORANDUM OF DECISION

There are two matters before the Court: (1) a "Motion for Relief from the Automatic Stay" (the "Motion for Relief") filed by Consumer Solutions REO, LLC ("Consumer REO"); and (2) a "Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (the "Summary Judgment Motion") filed by defendants Mortgage Electronic

Registration Systems, Inc. ("MERS") and Consumer Solutions, LLC ("Consumer") (together, the "Defendants") with respect to all counts of the First Amended Complaint (the "Complaint") filed by Luisa E. Lopez and Amilcar F. Lopez (together, the "Debtors").

I.    FACTS AND TRAVEL OF THE CASE

The Debtors allege the following in their Complaint.

In 2005, Decision One Mortgage Company, LLC ("Decision One") agreed to provide the Debtors with a refinancing of the first mortgage on their home in Andover, Massachusetts (the "Property"). In support of that loan, Luisa Lopez executed a promissory note payable to Decision One in the amount of $382,400.00 (the "Note")[1] and both Debtors executed a mortgage on the Property (the "Mortgage") in favor of MERS, as nominee for Decision One, to secure repayment of the Note (together, the "Loan"). Both the Note and the Mortgage were recorded in the Essex County Registry of Deeds (the "Registry"). The Loan was an adjustable rate mortgage loan ("ARM") with an introductory interest rate of 7.81%. The Note provided for interest rate and monthly payment changes commencing December 7, 2007 and every six months thereafter (the "change dates"), based on rate indexing as set forth in the Note; except that the interest rate on the first change date would be no greater than 10.81% and subsequent changes no more than an additional 1%.

---

[1] Pursuant to the HUD-1 Settlement Statement executed by Luisa Lopez on December 2, 2005, Decision One was actually providing two separate loans. Line 202 reads, "Principal Amount of first Loan $382,400.00" and Line 203 reads, "Net Amount of Second Loan $9437.30." See Def.'s Mot. Summ. J., ECF No. 77, Ex. E. However, only the $382,400 Note has been presented to the Court. Id. Ex. A.

The Debtors ultimately fell behind on their Loan payments, and at some point, Consumer, representing itself as the then current holder of the Mortgage, executed and filed a complaint with the Land Court Department of the Massachusetts Trial Court (the "Land Court") pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. App. §§ 501-591 (the "Servicemember's Act").  Exactly when it did so is the subject of some dispute, as the Debtors say that Consumer *signed* the Servicemember's Act complaint on July 31, 2008, but did not *file* that complaint with the Land Court until October 1, 2009.

On January 9, 2009, MERS, as nominee for Decision One, executed an assignment of the Mortgage to Consumer (the "Assignment"), which Assignment was recorded on February 2, 2009.  On March 11, 2009, Consumer sold the Property at a foreclosure auction (the "Foreclosure Sale") to Consumer REO.  The foreclosure deed was recorded in the Registry on October 1, 2009.

On December 23, 2009, the Debtors filed the instant Chapter 13 bankruptcy case.   Consumer REO filed its Motion for Relief on April 6, 2010. The Debtors responded by filing an objection to the Motion for Relief and by commencing the instant adversary proceeding through which the Debtors seek, *inter alia*, a declaratory judgment that the Foreclosure Sale was invalid.  The Motion for Relief and adversary proceeding were thereafter consolidated for trial.  The Defendants have now filed the Summary Judgment Motion with respect to all counts in the Complaint and the Debtors have filed an opposition thereto.  After a hearing on the Summary Judgment Motion, the Court took the matter under advisement.

## II.    POSITIONS OF THE PARTIES

In their nine-count Complaint, the Debtors seek:  a declaratory judgment that the Foreclosure Sale was invalid (Count I); a declaratory judgment that the Defendants violated the Fair Debt Collection Practices Act (Count II); a declaratory judgment for breach of contract (Count III); damages for the Defendants' alleged violation of the Truth in Lending Act and the Massachusetts Consumer Credit Cost Disclosure Act  (Count IV); damages for the Defendants' alleged negligent lending practices (Count V); damages for alleged emotional distress (Count VI); damages for the Defendants' alleged abuse of process (Count VII); a declaratory judgment that the Defendants committed fraud and/or fraudulent concealment (Count VIII); and damages for the Defendants' alleged  predatory lending (Count IX).

### A.  Violation of M.G.L. ch. 244 Wrongful Foreclosure (Count I)

The Debtors contend that, at the time of the Foreclosure Sale, Consumer had no legal right to foreclose on the Mortgage, because the Assignment to Consumer was invalid for two reasons:[2]  (1) the mailing address for Consumer listed on the Assignment was the address of a dissolved corporation; and (2) a certain Vickie Roper, who executed the Assignment on behalf of MERS as "Vice President," was not a principal

---

[2]  The Debtors initially also argued that MERS had no authority to assign the Mortgage to Consumer and that Consumer, in turn, had no authority to conduct the Foreclosure Sale, because neither held the underlying Note at relevant times.  However, in light of the rulings in Eaton v. Federal National Mortgage Association, 462 Mass. 569, 588-89 (2012), issued by the Massachusetts Supreme Judicial Court (the "SJC") on June 22, 2012, the Debtors have conceded that this argument is no longer tenable. In Eaton, the SJC ruled that the entity foreclosing on a mortgage pursuant to a power of sale must hold both the note (or act on behalf of the note holder) and the mortgage. That ruling, however, was to be applied prospectively only. 462 Mass. at 517. The facts before the Court here pre-date Eaton.

officer of MERS, but rather an agent of Consumer, and was therefore without authority to sign on MERS' behalf.

As for the allegedly faulty address, the Defendants maintain that the use of an address of a defunct corporation or an errant address for an existing corporation does not invalidate the effectiveness of a mortgage assignment.  The Defendants explain that the address for Consumer which appears on the Assignment was merely outdated. According to the Defendants, Consumer is a Delaware Corporation in good standing and a duly registered foreign corporation in Massachusetts. And the use of an incorrect address for Consumer did not invalidate the Assignment because, under Massachusetts law, even the failure to provide *any* address at all is not invalidating.  Nor do the Defendants consider the late execution of the Assignment (after the filing of the Servicemember's Act complaint) material to the validity of the Assignment or the Land Court judgment thereon,[3] because the Land Court action was commenced solely to ensure that no owner of the Property was entitled to the protections of the Servicemember's Act.

And finally, the Defendants' argue that the Debtors cannot challenge the validity of the Assignment based upon Ms. Roper's execution, because, as non-parties to the Assignment, they lack standing to challenge it.

### B.  Violation of Fair Debt Collection Practices Act (Count II)

The Debtors assert that the Defendants violated the Fair Debt Collection Practices Act (the "FDCPA") when Consumer misrepresented its authority to commence the foreclosure process and knowingly conducted an illegal foreclosure of the Mortgage.

---

[3] Neither party has supplied copies of those documents.

In support of this claim, the Debtors cite to Title 209 of the Code of Massachusetts Regulations, which provides that knowingly or recklessly facilitating an illegal foreclosure of real property is an unfair or unconscionable means of a servicing a loan.

The Defendants argue that the Debtors lack standing to enforce the Code of Massachusetts Regulations as it pertains to the Massachusetts Division of Banks, because Title 209 does not create a private right of action for the benefit of mortgagors.

### C. Breach of Contract (Count III)

Relying on their characterization of the Note and the Mortgage as contracts, the Debtors argue the Defendants failed to deal with the Debtors fairly and in good faith because they failed to provide truthful notices to the Debtors as required by the Note and the Mortgage.

The Defendants point to the language in the Note and the Mortgage describing the notice requirements, and contend that neither requires "truthful" notices[4] or that the Defendants act in good faith.  Additionally, the Defendants cite to Massachusetts case law expressing a reluctance to impose a common law contractual duty to negotiate in good faith absent an express undertaking to do so.

### D. Truth in Lending Violation (Count IV)

The Debtors maintain that, because they did not receive a total of four copies of the Notice of Right to Cancel at closing as required by both the Truth in Lending Act ("TILA") and the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), they have an extended right to rescind the underlying loan transaction and void the Mortgage lien.

---

[4] Giving the Defendants the benefit of the doubt, the Court assumes that this argument was made in jest.

The Defendants contend that the Debtors' TILA and MCCCDA claims are time barred; and even if timely, the delivery to the Debtors of at least one copy of the Notice of Right to Cancel was sufficient under both statutes.

### E. Negligent Lending (Count V)

The Debtors allege that the Defendants are liable for negligent lending because their lending practices fell below the mortgage lending industry's standard of care.  The Debtors argue that they were damaged by Defendants negligent failure to consider the Debtors' ability to make mortgage payments upon the change dates.

The Defendants respond that this claim is also time barred.  And notwithstanding the statute of limitations, the Defendants say that Massachusetts law does not impose a duty on a lender to ensure that borrowers have the ability to make payments on mortgage loans.

### F. Emotional Distress (Count VI)

The Debtors claim that, as a cumulative result of the Defendants' alleged actions, the Debtors have suffered emotional distress for which the Defendants should be held responsible.

The Defendants argue that their actions taken to foreclose on the Mortgage, even if improper, did not rise to the level of extreme and outrageous conduct required to prove a claim for emotional distress.  Further, the Defendants say that Consumer, as assignee, cannot be held responsible for any actions taken by the original lender (Decision One).

### G.  Abuse of Process (Count VII)

The Debtors claim that the Defendants' use of legal process both in the Land Court and in this Court to obtain allegedly meritless judgments against the Debtors related to the foreclosure of the Mortgage amounts to abuse of the judicial process.

The Defendants say that the only "process" which could be challenged is the Land Court action.  But because they had no ulterior motive behind that action, they maintain that their actions cannot be characterized as abusive.  And, in any event, the Servicemember's action was filed for the sole purpose of determining whether the Debtors were entitled to the Servicemember's Act's protections, not to exercise the power of sale in the Mortgage.

### H.  Fraud and/or Fraudulent Concealment (Count VIII)

The Debtors allege that the invalid assignment of the Mortgage from MERS to Consumer, and the subsequent recordation of that Assignment, in an effort to improperly foreclose on the Property amounted to false representations of material fact. And the Debtors say they were damaged when they made mortgage payments to Consumer in reliance on those misrepresentations since Consumer had no legal right to receive such payments.

The Defendants maintain that the Debtors' claim for fraud is time barred and, in any event, is without merit, since Consumer owed no fiduciary duty to the Debtors.

### I.    Predatory Lending (Count IX)

The Debtors argue that Decision One procured the Loan from the Debtors by means of willful deception.  According to the Debtors, the Defendants actions were unfair and deceptive because Decision One knew or should have known that the terms

of the Loan, which the Debtors characterize as a "high-cost" loan, were such that the Debtors would inevitably default.

The Defendants contend that the Loan was a not a "high-cost" loan and argue that the Debtors failed to either properly state a claim under the Massachusetts Predatory Home Loan Practices Act or show how the Loan meets the definition of a "high-cost loan" under that act.

## III.    DISCUSSION

### A.    Summary Judgment Standard

Only if the moving party can show "'that there is no genuine dispute as to any material fact' and that it 'is entitled to judgment as a matter of law'" will it succeed on its motion for summary judgment.  OneBeacon America Ins. Co. v. Commercial Union Assur. Co. of Canada, 684 F. 3d 237, 241 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). [5] "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Id. (internal citations omitted).  On the other hand, "'[t]he non-movant may defeat a summary judgment motion by demonstrating, through [] submissions of evidentiary quality, that a trial worthy issue persists,'" by "point[ing] to specific, competent evidence to support [that] claim." Sheedy v. Deutsche Bank Nat'l Trust Co. (In re Sheedy), 2012 WL 4510781, *6 (Bankr. D. Mass. Sept. 27, 2012) (quoting Rockwood v. SKF USA Inc., 687 F.3d 1, 9 (1st Cir. 2012)) (additional citations omitted).  However, the Court will "afford no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the

---

[5] Fed. R. Civ. P. 56(a) is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.

aggregate, is less than significantly probative.'"   In re Lacey, 480 B.R. 13, 29 (Bankr. D.

Mass. 2012) (quoting Tropigas de P.R., Inc., v. Certain Underwriters at Lloyd's of

London, 637 F.3d 53, 56 (1st Cir. 2011) (internal citations omitted)).

### B.   Wrongful Foreclosure (Count I)

In Massachusetts,

> with the exception of the limited judicial procedure aimed at certifying that
> the mortgagor is not a beneficiary of the [Servicemember's Act], a
> mortgage holder can foreclose on a property … by exercise of the
> statutory power of sale, if such a power is granted by the mortgage itself.

U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 646 (2011).   It follows that an assignee

of a mortgage with a power of sale inherits the authority to foreclose on the subject

property.   See Mass. Gen. Laws ch. 183, § 21.   This, of course, assumes the validity of

the assignment.   The Debtors advance two reasons why the Foreclosure Sale should

be declared void.

First, the Defendants argue that the Debtors cannot challenge the Foreclosure

Sale because the Debtors lack standing to challenge the Assignment.   However, as this

Court explained in In re Bailey, 468 B.R. 464, 474-75 (Bankr. D. Mass. 2012), the

Debtors' argument that the Assignment was made by or to a defunct corporation is "not

an attack on the Assignment itself" or "based on the breach of an underlying contract to

which [the Debtors were] not a party" but rather a challenge to Consumer's status as a

legal holder of the Mortgage at the time of the Foreclosure Sale.   And where debtors

challenge the validity of the assignment which provides the basis for the foreclosing

entity's right to foreclose,

> [they] have demonstrated 'a concrete and particularized injury in fact, a
> causal connection that permits tracing the claimed injury to the
> defendant's actions, and a likelihood that prevailing in the action will afford

> some redress for the injury.' <u>Antilles Cement Corp. v. Fortuno</u>, 670 F.3d
> 310, 317 (1st Cir. 2012) (quoting <u>Weaver's Cove Energy, LLC v. R.I.
> Coastal Res. Mgmt. Council</u>, 589 F.3d 458, 467 (1st Cir. 2009)).   The
> injury to the Debtor[s] is the purported termination of [their] equity of
> redemption in the [p]roperty by a party who had no authority to foreclose
> that equity of redemption.

<u>Bailey</u>, 468 B.R. at 475.   If Consumer did not hold the Mortgage at the time it

foreclosed, the Debtors' injury is traceable to Consumer because the Foreclosure Sale

resulted in the Debtors' claimed injury.   <u>Id.</u>   Accordingly, the Debtors have standing to

seek a ruling on the validity of the Foreclosure Sale on the basis that Consumer had no

legal right to foreclose.

But it is not enough to have standing.   One must then have a winning argument

on the merits.   In reverse order, the Debtors contend that Vickie Roper, a purported

Vice President of MERS, did not have the authority to assign the Mortgage on behalf of

MERS.    Massachusetts General Laws. ch. 183, § 54B governs the assignments of

mortgages in Massachusetts and reads in pertinent part:

> Notwithstanding any law to the contrary a[n] … assignment of mortgage …
> if executed before a notary public, justice of the peace or other officer
> entitled by law to acknowledge instruments, whether executed within or
> without the commonwealth, by a person purporting to hold the position of
> … vice president, … or other similar office, including assistant to any such
> office or position, of the entity  holding such mortgage, or otherwise
> purporting to be an authorized signatory for such entity … shall be binding
> upon such entity.

Mass. Gen. Laws ch. 183, § 54B.   In other words, to be valid and binding, an

assignment must be (1) executed before a notary public or person with similar authority

to acknowledge such instruments; and (2) executed by a person "purporting" to hold the

position of vice president or the like, with "the entity holding such mortgage." <u>Id.</u>  The

Debtors say that Vickie Roper did not have the necessary authority to sign the

Assignment on behalf of MERS.  The Defendants say otherwise and claim to have filed a document evidencing her authority to execute the Assignment on behalf of MERS. They are mistaken; no evidence of Ms. Roper's authority was filed. But no such evidence was necessary.  "Under Massachusetts law, an assignment of a mortgage is effective without the need to independently establish the [signatory] authority of the assignor to make the assignment."  In re Marron, 455 B.R. 1, 8 (Bankr. D. Mass. 2011) (citing Aliberti v. GMAC Mortg., LLC, 779 F.Supp.2d 242, 249 (D. Mass. 2011); Kiah v. Aurora Loan Services, LLC, 2011 WL 841282, *7 (D. Mass. 2011)).   Because the Assignment was executed before a notary public and by a person "purporting" to be a vice president of MERS, the Assignment is binding.

The Debtors further argue that the Assignment is invalid because the address of Consumer is faulty. While mortgages and assignments of mortgages need not be recorded to be valid and enforceable under Massachusetts law,

> [e]very mortgage and assignment of mortgage presented for record shall contain or have endorsed upon it … the business address … of the mortgagee or assignee if the mortgagee or assignee is not a natural person.

Mass. Gen. Laws ch. 183, § 6C.  Failure to provide the assignee's address, however, is not fatal to the assignment.  See Id. ("Failure to comply with this section shall not affect the validity of any mortgage or assignment of a mortgage or the recording thereof."). The Debtors contend, however, that the flaw is more extensive in scope. They maintain that, during the relevant period, Consumer was actually a dissolved corporation and have submitted the results of a Utah.gov business search to support that allegation. See Clayton Aff. in Opp. To Def.'s Mot. Summ. J. Ex. B.

The Defendants counter that the address for Consumer on the Assignment was merely incorrect, and Consumer did in fact exist at the time of both the execution of the Assignment and the Foreclosure Sale. In their Summary Judgment Motion, the Defendants reference two documents in support of their argument: (1) a document evidencing Consumer as a duly registered Foreign Corporation in the state of Massachusetts since 2005; and (2) a Certificate of Good Standing with the State of Delaware (where Consumer is supposedly incorporated). But the Defendants failed to attach those documents to their papers. Because Consumer's existence during the relevant period is material to the validity of the Assignment and therefore the Foreclosure Sale, summary judgment on Count I must be denied. And because Counts II (Violation of FDCPA), VII (Abuse of Process), and VIII (Fraud/Fraudulent Concealment) are each predicated upon this Court finding that the Foreclosure Sale was invalid, summary judgment must be denied for those counts as well.

### E.    Breach of Contract (Count III)

The Debtors argue that the Defendants failed to deal with the Debtors fairly and in good faith when they failed to provide the Debtors with truthful notices pursuant to the terms of the Note and the Mortgage. The Note in fact contains several provisions governing notices to be provided to the borrower related to changes in interest rates, monthly payments, and defaults; and the Mortgage contains notice requirements related to the sale of the Note, changes in loan servicer, acceleration remedies, and the power of sale. See Def.'s Mot. Summ. J., ECF No. 77, Ex. A and B. All notices under the terms of the Note and the Mortgage are required to be in writing and sent to the Property address unless the borrower designates a substitute address by notice to the

lender.  Id. at Ex. A, ¶8; Ex. B. ¶15.  However, nowhere in the Complaint do the Debtors describe a particular notice the Defendants failed to provide or failed to provide truthfully.

It is well settled under Massachusetts law that "[e]very contract is subject to an implied covenant of good faith and fair dealing."  In re Laudani, 401 B.R. 9, 38 (Bankr. D. Mass. 2009). However, "the covenant 'may not … be invoked to create rights and duties not otherwise provided for in the existing contractual relationship.' 'The scope of the covenant is only as broad as the contract that governs the particular relationship.'" Id. at 38-39 (quoting Liss v. Studeny, 450 Mass. 473, 477, 879 N.E. 2d 676 (2008)).  To the extent that Count III is intended to assert a breach of the implied covenant of good faith and fair dealing with respect to the Defendant's failure to negotiate with the Debtors prior to the Foreclosure Sale, neither the Note nor the Mortgage contains any express obligation to negotiate with the borrower prior to the lender's exercise of the power of sale.  See Def.'s Mot. Summ. J., ECF No. 77, Exs. A-B.  And, "[i]n the absence of an express undertaking to negotiate in good faith, the courts have been reluctant to impose a common law duty to do so."  Latham v. Homecomings Financial LLC, 27 Mass. L. Rptr. 3, 4 (citing Carney v. Shawmut Bank, N.A., 2008 WL 4266248 at *3; Schwanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. 390, 396, 578 N.E.2d 789 (1991), rev'd on other grounds, 412 Mass. 703, 592 N.E. 2d 1289 (1992)).[6]  For these reasons, the Court will grant summary judgment in favor of the Defendants on Count III.

---

[6]  Amendments made to M.G.L. ch. 244 § 35A, effective August 7, 2010, and further amendments to that section, effective January 1, 2016, impose certain negotiation obligations on lenders of residential real estate before foreclosure.  Here, however, all of the relevant events pre-dated those amendments.

### F.    Truth in Lending Violation (Count IV)

The Debtors claim that the Defendants violated TILA and the MCCCDA by failing to provide the Debtors with a total of four Notices of Right to Cancel ("Notices") as required under those statutes.   Even were the Debtors' claim not time barred, as the Defendants assert, the First Circuit Court of Appeals has now clarified that, so long as a borrower receives one Notice, the rescission period may not be extended under either statute.   See McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 216 (1st Cir. 2012); Cromwell v. Countrywide Home Loans, Inc., No. 11-12054 2012 WL 4127910, at *7 (D. Mass. Sept. 20, 2012).  In McKenna, the First Circuit Court of Appeals held that

> [t]he [MCCCDA] … says nothing about the lack of multiple copies being a basis for rescission; the time period for rescission is only extended from three days to four years if the borrower does not receive an appropriate 'written *notice*' (singular), Mass. Gen. Laws ch. 140D, §10(h), (i)(1)(B); and the relevant regulations specify the conditions under which a borrower has an extended right of rescission, 209 Mass. Code Regs. § 32.15(1)(c)-(d), in a different subsection than the multiple copy requirement, id. § 32.15(2).

> If it were necessary to go beyond the language of the statutes and regulations, one might fairly point out that the purpose of the four-year extension is to give the consumer the information needed to decide intelligently whether to cancel; one copy performs this function as well as two, at least in a case where the [debtors] never parted with their first copy of the form.  Anyway, the more straightforward reading of the statute and regulations makes lack of notice, not the number of copies, the predicate for rescission.

693 F.3d at 216.  Because the Debtors do not dispute that they received at least one copy of the Notice, the Court will enter summary judgment in favor of the Defendants on Count IV.

### G.    Negligent Lending (Count V)

To properly state a claim for negligence, "the plaintiff must show that the defendant 'owed him a duty of reasonable care, that the [defendant] committed a breach of that duty, that damage resulted, and that there was a causal relation between the breach of duty and the damage." Go-Best Assets Ltd. v. Citizens Bank of Massachusetts, 463 Mass. 50, 54 972 N.E.2d 426, 431 (2012) (citing Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 39, 907 N.E.2d 213 (2009)).  Here, the success of Debtors' negligence claim turns on whether the Defendants owed the Debtors a duty of care independent of their contractual obligations under the Note and the Mortgage – specifically, whether the Defendants had a duty to ensure that the Debtors could make their payments. But the Debtors failed to plead the basic elements of a claim for negligence, nor have they cited any case law describing a standard of care for mortgage lenders.  Except in cases of predatory lending (see below), Massachusetts law does not impose on mortgage lenders a fiduciary duty of care for borrowers. Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 59 (1st Cir. 2011) (citations omitted).

For these reasons, the Court will grant summary judgment in favor of the Defendants on Count V.

### H.    Predatory Lending (Count IX)

The Debtors allege that the Loan was a "high-cost" home mortgage loan pursuant to Mass. Gen. Laws. ch. 183C and was by its terms unfair and deceptive.  The Predatory Home Loan Practices Act (the "Act") makes unlawful the issuance of a

> high-cost home mortgage loan unless the lender reasonably believes at
> the time the loan is consummated that 1 or more of the obligors, will be

> able to make the scheduled payments to repay the home loan based upon a consideration of the obligor's current and expected income, current and expected obligations, employment status, and other financial resources other than the borrower's equity in the dwelling which secures repayment of the loan.

Mass. Gen. Laws. ch. 183C, § 4.  A "high-cost home mortgage loan" is

> a consumer credit transaction that is secured by the borrower's principal dwelling, other than a reverse mortgage transaction, (sic) a home mortgage loan that meets 1 of the following conditions: --
> (i) The annual percentage rate at consummation will exceed by more than 8 percentage points for first-lien loans, … the yield on United States Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the lender; and when calculating the annual percentage rate for adjustable rate loans, the lender shall use the interest rate that would be effective once the introductory rate has expired.
> (ii) Excluding either a conventional prepayment penalty or up to 2 bona fide discount points, the total points and fees exceed the greater of 5 per cent of the total loan amount or $400; the $400 figure shall be adjusted annually by the commissioner of the banks on January 1 by the annual percentage change in the Consumer Price Index that was reported on the preceding June 1.

Id. at § 2.  The Defendants contend that the Debtors' loan did not fit the criteria of a "high-cost home mortgage loan" under the Act.  The Defendants maintain that the Annual Percentage Rate (the "APR") calculated on December 7, 2007 – the date the introductory rate expired – was 11.2037% (the "Fully Indexed Rate")[7], while the yield on the applicable United States Treasury Securities one month prior to that date was 4.64%.  Eight (8) points added to the latter equals 12.64%.  Because the sum of the yield on United States Treasury Securities plus eight points was higher than the Fully Indexed Rate, the Loan was not a "high-cost home mortgage loan" under the Act.

---

[7] The Defendants based the Fully Indexed Rate on an adjusted rate of 10.81%, set forth in the Note as the maximum on the first change date.

Furthermore, notwithstanding the Act's prohibition of certain "high-cost home mortgage loans", the Act creates a presumption that the borrower will nevertheless be able to repay a "high-cost home mortgage loan" "if the borrower's debt-to-income ratio, calculated based on the fully indexed rate associated with an ARM loan, does not exceed fifty per cent of the borrower's verified monthly gross income."[8] Commonwealth v. Fremont Investment & Loan, 452 Mass. 733, 559-60 (2008) (citing Mass. Gen. Laws. Ch. 183C, § 4). Without providing any calculations, the Debtors' assert that their debt-to-income ratio at the Fully Indexed Rate under the Note exceeded fifty per cent. Not so, say the Defendants. According to the Debtor's Loan Application, the Debtors' stated gross monthly income was $11,000. The Defendants calculate the monthly Loan payments as $4,130.89. With the addition of $507 for the Debtors' monthly credit card and second mortgage payments, as set forth under the Loan Application, the Debtor's monthly debt payments totaled $4,637.89, yielding a debt-to-income ratio of approximately 42%.

The Debtors have not provided any different calculations; instead, they make only the unsubstantiated allegation that the mortgage broker manipulated data concerning their income, expenses, and assets for the purpose of qualifying them for the highest loan amount possible. Maybe so, but the Debtors have failed to say how. "Because the Debtor[s] failed to produce a scintilla of evidence that would permit this

---

[8] The debt in this equation includes "the borrower's scheduled monthly payments on the loan, including principal, interest, taxes, insurance, and assessments, combined with the scheduled payments for all other debt." Mass. Gen. Laws ch. 183C, §4.

Court to find that the [Loan] was a [high-cost loan]," the Court must find that it was not.[9]
Laundi v. Tribeca Lending Corp., et al (In re Laudani, 401 B.R. 9, 33 (Bankr. D. Mass. 2009). Accordingly, the Defendants are entitled to summary judgment on Count IX.[10]

## I.    Emotional Distress (Count VI)

The Debtors assert that "[t]he actions of the Defendants, as described herein, caused the [Debtors] to suffer emotional distress of a nature and degree that is outrageous and intolerable in a civilized society." The Debtors have failed, however, to specify whether they are attempting to state a claim under *negligent* or *intentional* infliction of emotional distress nor have they set forth a basis for establishing either one. To state a claim for intentional infliction of emotional distress, "the plaintiff must show (1) that the defendants intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." Roman v. Trustees of Tufts College, 461 Mass. 707, 717, 964 N.E.2d 331, 341 (2012) (internal citations omitted). Admittedly, "the prospect of losing one's home may cause one to suffer palpable distress." Powell v. Ocwen Loan Servicing, LLC, 29 Mass. L. Rptr. 366, 8 (2012). However, a count for intentional infliction of emotional distress under the facts of the instant case "simply

---

[9] The Debtors do not address the total points and fees test set forth in Mass. Gen. Laws. ch. 183C, §2(ii).

[10] Furthermore, no claim is possible under Mass. Gen. Laws ch. 93A ("Chapter 93A"), which provides that "[u]nfair or deceptive acts or practices in the conduct of trade or commerce are hereby declared unlawful" - since the Debtors did not send a written demand to any of the Defendants as required by Chapter 93A, §9 before filing the Complaint. Mass. Gen. Laws ch. 93A, §9(3).

overreaches" in comparison "to the facts of those cases where the claim is properly asserted." Id. (citing Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976) (public humiliation); Simon v. Soloman, 385 Mass. 91, 95 (1982) (sewage overflow into tenant's apartment cause by refusal to make necessary repairs); Boyle v. Wenk, 378 Mass. 592 (1979) (persistent harassment by private investigator)).   Furthermore, as Judge Bailey recently noted in In re Mae, a bank's "[intention] to exercise what it believed was its right to foreclose and, to that end, commenced foreclosure proceedings" does not rise to the level of "extreme and outrageous conduct" necessary to state a claim for intentional infliction of emotional distress. 460 B.R. 1, 4 (Bankr. D. Mass. 2011); see also Bailey v. Wells Fargo Bank, NA (In re Bailey), 437 B.R. 721, 730 (Bankr. D. Mass. 2010).

In order to support a claim for *negligent* infliction of emotional distress, Massachusetts law requires proof of the following elements: "(1) negligence; (2) emotional distress; (3) causation; (4) *physical harm* manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Payton v. Abbot Labs, 386 Mass. 540, 437 N.E.2d 171, 181 (1982) (emphasis supplied).   As in Bailey, "[t]he Debtor[s] ha[ve] not alleged any physical harm, and ha[ve] therefore failed to plead a sufficient claim for relief for negligent infliction of emotional distress." 437 B.R. at 730.

Accordingly, the Defendants are entitled to summary judgment on Count VI.

IV.    CONCLUSION

For all the foregoing reasons, summary judgment will be granted in favor of the Defendants with respect to Counts III, IV, V, VI and IX and denied with respect to Counts I, II, VII, and VIII.  An order in conformity with this Memorandum shall issue forthwith.


DATED:  January 3, 2013

By the Court,

_____

Henry J. Boroff
United States Bankruptcy Judge